Estado Libre Asociado de Puerto Rico
**TRIBUNAL DE APELACIONES**
**PANEL VIII**

| In Re: 10 Year Plan Federally Funded Competitive Process<br><br>Genera PR, LLC<br><br>Recurrente<br><br>Negociado de Energía de Puerto Rico<br><br>Recurrido | KLRA202400630 | **REVISIÓN ADMINISTRATIVA** procedente del Negociado de Energía de Puerto Rico<br><br>Caso Núm.: NEPR-MI-2022-0005<br><br>Sobre: Determinación de falsa representación; notificación defectuosa; violación a debido proceso de ley |
|---|---|---|

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Adames Soto y la Jueza Santiago Calderón.

Rivera Colón, Juez Rivera Colón

**SENTENCIA**

En San Juan, Puerto Rico, a 5 de diciembre de 2024.

Comparece ante nos, Genera PR, LLC (en delante, Genera o recurrente), quien presenta recurso de revisión administrativa en el que solicita la revisión de la "Resolution and Order" emitida el 17 de septiembre de 2024,[1] por el Negociado de Energía de Puerto Rico (en lo sucesivo, NEPR o recurrido). Mediante el aludido dictamen, el NEPR concluyó que el retraso y el aumento de costos en el proyecto se debió a las falsas representaciones hechas por Genera, particularmente por su compromiso de reducir los costos y terminar en una fecha anterior a la estimada por la Autoridad de Energía Eléctrica (AEE). Ante ello, ordenó a Genera a completar el proyecto para finales del segundo trimestre del 2026. Además, le advirtió que, de no culminar el proyecto dentro de esta fecha, se le impondrá una multa de $25,000.00 por cada día que el proyecto permanezca incompleto.

---
[1] Notificada ese mismo día.

Número Identificador

SEN2024 _____

Examinada la solicitud de autos, la totalidad del expediente y el estado de derecho aplicable, desestimamos el recurso mediante los fundamentos que expondremos a continuación.

**I.**

El 23 de enero de 2023, el NEPR emitió una Resolución mediante la cual aprobó el requerimiento de propuestas (RFP) de la AEE para la adquisición de sistemas de generación de "peakers" de emergencia en las plantas de Jobos, Daguao y Palo Seco, sujeto a diversas condiciones.

Posteriormente, el 25 de mayo de 2023, Genera presentó un memorando en el que propuso un enfoque y plan distinto para la adquisición de los "peakers", y aseguró que su propuesta sería más eficiente que la hecha por la AEE.

Mediante escrito radicado el 16 de agosto de 2023, Genera incluyó como Anejo A un informe describiendo el estado del proceso de adquisición y recomendaciones para cambios en el proceso de RFP. Específicamente, explicó que el costo del proyecto sería significativamente menor al estimado por la AEE, y que el tiempo para completarlo se reduciría entre 9 a 12 meses.

Considerando lo anterior, el 23 de agosto de 2023, el NEPR emitió una Resolución y permitió que el proceso de RFP continuara de la manera propuesta por Genera, según el Anejo A de la Moción presentada el 16 de agosto de 2023. Por esta razón, el 8 de noviembre de 2023, el NEPR emitió otra Resolución aprobando el RFP presentado por Genera para la contratación de los servicios.

Así las cosas, y luego de considerar que había un retraso en el proceso, el 30 de julio de 2024, el NEPR emitió Resolución por la cual ordenó a Genera a presentar informes mensuales incluyendo un estimado del tiempo necesario para completar el proyecto. Adicionalmente, concedió al recurrente un término de 10 días para informar cómo su enfoque ha reducido costos y acelerado la fecha

de operación comercial (COD), en comparación con el RFP de la AEE.

En cumplimiento con esta orden, el 9 de agosto de 2024, Genera sometió una Moción distinguiendo su plan del propuesto originalmente por la AEE. Entre otras cosas, enfatizó el potencial de ahorros significativos en costos operativos.

Varios días después, el 19 de agosto de 2024, el recurrente sometió su informe mensual y abordó sobre la información requerida en la Resolución del 30 de julio de 2024. Respecto a los costos y el calendario, manifestó que el estimado preliminar era de $911,340,000.00, y que el COD se proyectaba para el primer y cuarto trimestre del 2027.

Ante la información provista en el escrito que antecede, el 28 de agosto de 2024, el NEPR le concedió a Genera un término de 5 días para mostrar causa por la cual no debía imponérsele una multa administrativa de $25,000.00. Lo anterior, debido a que el NEPR entendió que el recurrente hizo falsas representaciones en el proceso de RFP. Esto, en vista de que Genera representó que: (1) el costo del proyecto sería mucho menor al estimado de $613,541,936.38 que había hecho la AEE, y (2) la fecha de COD propuesta por la AEE (primavera del año 2026) se reduciría entre 9 a 12 meses. No obstante, según la información provista por Genera en su Moción del 19 de agosto de 2024, el estimado preliminar era mayor al propuesto por la AEE y el COD se proyectaba para el 2027. Además, el NEPR ordenó al recurrente a proveer la siguiente información:

> *a) The basis for the representations made regarding cost savings and the COD timeline;*
>
> *b) A detailed explanation of the reasons for the discrepancies between the projected and actual costs and timelines;*
>
> *e) Any mitigating circumstances or evidence that Genera wishes to present in defense of its actions; and*

*d) A clarification on whether the increased costs incurred under Genera's administration (any amount exceeding PREPA's original estimate) are expected to be recovered from the Federal Emergency Management Agency ("FEMA") or any other sources.*

Mediante escrito presentado el 5 de septiembre de 2024, Genera arguyó que las discrepancias entre los resultados proyectados y el estado actual del proceso se originaron por factores externos que están fuera de su control. Por ejemplo, adujo que el aumento de costos y el retraso del proyecto se debió a las condiciones del mercado, por la crisis económica, cambios regulatorios imprevistos e interrupciones en la cadena de suministros. Adicionalmente, argumentó que el estimado y la fecha de COD propuestos por la AEE nunca fueron validados y eran inalcanzables.

Para complementar su escrito, el 12 de septiembre de 2024, el recurrente presentó una Moción incluyendo anejos en los cuales se detallaban aquellos factores que contribuyeron a que el proyecto fuese atrasado.

En el ínterin, el 6 de septiembre de 2024, el NEPR concedió un término a la AEE para que se expresara en cuanto al escrito del 5 de septiembre de 2024. En atención a lo cual, el 13 de septiembre de 2024, la AEE compareció y sostuvo que las afirmaciones por parte de Genera eran engañosas y no representaban la realidad del proceso. En cuanto a que sus estimados en cuanto al costo y tiempo no eran posibles, expuso que la fecha de entrega la establecían los proponentes y que la AEE tenía certeza de que las representaciones que estos hacían en sus propuestas, toda vez que ellos pagaban una fianza y contaban con el apoyo de los manufactureros. Además, explicó que una de las razones principales para la demora del proyecto fueron las decisiones que tomó Genera, entre ellas, cancelar el RFP original y reconfigurar el proyecto de una manera más costosa y compleja.

Evaluados los escritos presentados, el 17 de septiembre de 2024,[2] el NEPR emitió una "Resolution and Order" mediante la cual determinó que el retraso y el aumento de costos en el proyecto se debió a las falsas representaciones hechas por Genera. Por esta razón, ordenó al recurrente a completar el proyecto para finales del segundo trimestre del 2026 y le advirtió que, de no culminar el proyecto dentro de esta fecha, se le estaría imponiendo una multa diaria de $25,000.00 por cada día que el proyecto permanezca incompleto.

Aun cuando el NEPR no informó al recurrente sobre su derecho a solicitar reconsideración y/o revisión judicial, el 7 de octubre de 2024, Genera solicitó la reconsideración del dictamen y, entre otros asuntos, sostuvo que se le violentó su debido proceso de ley porque la determinación no le informó sobre su derecho a solicitar reconsideración y/o revisión judicial.

Atendida su petición, el 11 de octubre de 2024, el NEPR emitió una "Resolution" y declaró No Ha Lugar la solicitud de reconsideración presentada por el recurrente.

Aun insatisfecho, Genera recurre ante este foro apelativo intermedio, y señala la comisión de los siguientes errores, a saber:

> *Primer Error: Erró el Negociado de Energía al notificar la Resolución y Orden de 17 de septiembre de 2024, pues no incluyó las advertencias sobre el derecho de la parte afectada por la decisión administrativa de solicitar reconsideración ante la agencia, y de presentar un recurso de revisión judicial, y la forma y términos aplicables.*

> *Segundo Error: Erró el Negociado de Energía al notificar la Resolución de 11 de octubre de 2024, pues no incluyó las advertencias sobre el derecho de la parte afectada por la decisión administrativa de solicitar reconsideración ante la agencia, y de presentar un recurso de revisión judicial, y la forma y términos aplicables. Además, el NEPR tampoco discutió ni abordó los argumentos presentados por Genera en su Moción de Reconsideración.*

> *Tercer Error: Erró el Negociado de Energía al afectar derechos propietarios y de libertad de Genera sin un*

---

[2] Notificada en igual fecha.

*debido proceso de ley, al hacer una adjudicación de hechos falsas representaciones, sin la celebración de una vista evidenciaría en la que se pudiera escuchar prueba sobre las posturas opuestas de las partes.*

**II.**

**-A-**

Los tribunales tienen la responsabilidad de examinar su propia jurisdicción, así como la del foro de donde procede el recurso ante su consideración. *Torres Alvarado v. Madera Atiles,* 202 DPR 495, 500 (2019). La jurisdicción se refiere al "poder o la autoridad que tiene un tribunal para considerar y decidir casos o controversias que tiene ante sí". *R&B Power. Inc. v. Junta de Subasta ASG,* 2024 TSPR 24. Los tribunales deben ser celosos guardianes de su jurisdicción y no tienen discreción para asumir jurisdicción donde no la hay. *Pueblo v. Ríos Nieves,* 209 DPR 264, 273 (2022). En ese sentido, los foros judiciales tenemos el deber ineludible de atender con preferencia los asuntos concernientes a la jurisdicción. *R&B Power. Inc. v. Junta de Subasta ASG, supra.* Esto, pues, "[u]na vez un tribunal determina que no tiene jurisdicción para entender en el asunto presentado ante su consideración, procede la desestimación inmediata del recurso". *Pueblo v. Torres Medina,* 211 DPR 950, 958 (2023).

Es norma reiterada que, para adjudicar un caso, los foros judiciales de Puerto Rico deben tener jurisdicción sobre la materia, así como sobre las partes litigiosas. *FCPR v. ELA et al.,* 211 DPR 521, 530 (2023). La jurisdicción sobre la materia "se refiere a la capacidad del tribunal para atender y resolver una controversia sobre un aspecto legal". J.A. Echevarría Vargas, <u>Procedimiento Civil Puertorriqueño</u>, 1.ra ed., Colombia, 2010, pág. 25. Es el Estado el único que puede, a través de sus leyes, privar a un tribunal de jurisdicción sobre la materia, ya sea por disposición expresa o por implicación necesaria. *MCS Advantage v. Fossas*

*Blanco et al.*, 211 DPR 135, 145 (2023). La falta de jurisdicción sobre la materia da lugar a las consecuencias siguientes:

> *(1) no es susceptible de ser subsanada; (2) las partes no pueden voluntariamente conferírsela a un tribunal como tampoco puede éste arrogársela; (3) conlleva la nulidad de los dictámenes emitidos; (4) impone a los tribunales el ineludible deber de auscultar su propia jurisdicción; (5) impone a los tribunales apelativos el deber de examinar la jurisdicción del foro de donde procede el recurso, y (6) puede presentarse en cualquier etapa del procedimiento, a instancia de las partes o por el tribunal motu proprio. Beltrán Cintrón et al v. ELA et al,* 204 DPR 89, 101-102 (2020).

Por otro lado, la Regla 83 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B R. 83, nos otorga la facultad para desestimar, *muto proprio*, cualquier recurso cuando, entre otras circunstancias, este Tribunal de Apelaciones carezca de jurisdicción para atender el mismo. A tenor, nos corresponde evaluar la decisión cuya revisión se nos solicita, así como la etapa del procedimiento en que es presentada, con el propósito de determinar si es la más apropiada para intervenir. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 97 (2008).

Esto, pues, la presentación prematura o tardía de un recurso priva de jurisdicción al tribunal al cual se recurre. *Pueblo v. Rivera Ortiz*, 209 DPR 402, 415 (2022). Lo determinante para concluir si un recurso es prematuro o tardío es su fecha de presentación. *Íd.* Un recurso es prematuro cuando se ha presentado con relación a una determinación que se encuentra pendiente y no ha sido resuelta. *Yumac Home v. Empresas Massó*, 194 DPR 96, 107 (2015). O sea, es aquel que se presenta en la secretaría de un tribunal apelativo antes de que este adquiera jurisdicción. *Pueblo v. Ríos Nieves, supra*, a la pág. 274. En cambio, un recurso tardío es el que se presenta luego de transcurrido el término dispuesto en ley para recurrir. *Yumac Home v. Empresas Massó, supra,* a la pág. 107.

Ahora bien, las consecuencias de uno y otro son distintas. La desestimación de un recurso tardío es final, y priva fatalmente a la parte de presentarlo nuevamente. *Pueblo v. Rivera Ortiz, supra*, a la pág. 415. En cambio, un recurso desestimado por prematuro permite a la parte afectada presentarlo nuevamente en el momento oportuno. *Íd.* Esto es, luego de que cuando el foro recurrido resuelva lo que tenía ante su consideración. *Yumac Home v. Empresas Massó, supra*, a la pág. 107.

En resumen, los asuntos jurisdiccionales son privilegiados y deben cumplirse estrictamente porque, de lo contrario, el tribunal revisor no tendrá jurisdicción sobre el asunto y desestimará la reclamación sin entrar en los méritos de la controversia. *R&B Power. Inc. v. Junta de Subasta ASG, supra.*

**-B-**

La Constitución de Puerto Rico establece que ninguna persona será privada de su libertad o propiedad sin un debido proceso de ley. Véase, Art. II, Sec. 7 Const. ELA, LPRA, Tomo 1; Emdas. V y XIV, Const. EE. UU., LPRA, Tomo 1. Esa protección constitucional se manifiesta en dos vertientes distintas, a saber: (1) vertiente sustantiva, y (2) vertiente procesal. *PVH Motor v. ASG*, 209 DPR 122, 130 (2022). Esta última acepción "impone al Estado la obligación de garantizar que la interferencia con los intereses de libertad y propiedad del individuo se haga a través de un procedimiento que sea justo y equitativo". *Rivera Rodríguez & Co. v. Lee Stowell, etc.*, 133 DPR 881, 887-888 (1993).

En ese contexto, si el Estado atenta contra la libertad o propiedad de una persona, deberá resguardar las siguientes garantías: (1) notificación adecuada del proceso; (2) proceso ante un juez imparcial; (3) oportunidad de ser oído; (4) derecho a contrainterrogar a los testigos y examinar la evidencia presentada en su contra; (5) tener asistencia de abogado, y (6) que la decisión

se base en el expediente. *Vázquez González v. Mun. de San Juan,* 178 DPR 636, 643 (2010). De esta forma, el Estado cumple con garantizar el debido proceso de ley en su modalidad procesal y, a su vez, asegura que sus actuaciones sean justas e imparciales. *Díaz Carrasquillo v. García Padilla,* 191 DPR 97, 111 (2014).

La dimensión procesal del debido proceso de ley se extiende, no solo al ámbito judicial, sino también al administrativo. *PVH Motor v. ASG, supra,* a la pág. 139. De este modo, las agencias administrativas que ejercen una función adjudicativa, al interferir con los intereses libertarios y propietarios de los individuos, deben salvaguardar las garantías mínimas del debido proceso de ley. *Íd.*

En lo que nos concierne, nuestra Alta Curia ha dispuesto que el requisito de notificación adecuada no constituye una mera formalidad. *St. James Sec. v. AEE,* 2023 TSPR 149. Es norma firmemente establecida que la notificación inadecuada de la determinación final la agencia resguarda el derecho de las partes a cuestionar dicha decisión en el foro judicial. *Comisión Ciudadanos v. G.P. Real Property,* 173 DPR 998, 1014 (2008). Debido a esto, nuestro Tribunal Supremo ha resuelto que una notificación defectuosa no activa los términos para solicitar reconsideración o acudir en revisión judicial. *Horizon v. Jta. Revisora, RA Holdings,* 191 DPR 228, 235 (2014). En otras palabras, una notificación defectuosa priva de jurisdicción al foro revisor para entender en la controversia y el recurso que se presente a tales efectos es prematuro. *PVH Motor v. ASG, supra,* a la pág. 132. Ahora bien, la tardanza en presentar el recurso apelativo se debe analizar conforme la doctrina de incuria. *Íd.,* a la pág. 60.

Con relación a lo anterior, conviene mencionar que, la Sección 3.14 de la Ley 38-2017, 3 LPRA sec. 9654, mejor conocida como la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, según enmendada (en adelante, LPAU)

establece aquellas advertencias que debe contener toda Orden o Resolución Final emitida por la agencia administrativa. En términos literales, dispone lo siguiente:

> *La orden o resolución deberá incluir y exponer separadamente determinaciones de hecho si éstas no se han renunciado, conclusiones de derecho, que fundamentan la adjudicación, **la disponibilidad del recurso de reconsideración o revisión según sea el caso***. *La orden o resolución deberá ser firmada por el jefe de la agencia o cualquier otro funcionario autorizado por ley.*
>
> ***La orden o resolución advertirá el derecho de solicitar la reconsideración ante la agencia o de instar el recurso de revisión como cuestión de derecho en el Tribunal de Apelaciones**, así como las partes que deberán ser notificadas del recurso de revisión, con expresión de los términos correspondientes. Cumplido este requisito comenzarán a correr dichos términos*.

(Énfasis Nuestro).

Como puede apreciarse, la agencia debe advertir a las partes sobre la disponibilidad del recurso de reconsideración o revisión judicial en todo procedimiento final, con el propósito de que estas tengan la oportunidad de recurrir de la decisión, si es que así lo estiman conveniente. Por lo tanto, si al notificar su determinación final la agencia incumple con todas las advertencias que requiere la LPAU, ello constituirá una notificación defectuosa.

Finalmente, resulta pertinente resaltar el hecho de que el Art. 6.20 de la Ley Núm. 57-2014, 22 LPRA sec. 1054s, titulada Ley de Transformación y ALIVIO Energético, según enmendada, provee que:

> *Todos los procesos para los cuales esta Ley no provea disposiciones particulares, se regirán por la Ley 38-2017, según enmendada, conocida como "Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico". En virtud de ello, la citada Ley 38-2017 gobernará los procedimientos para la adopción de reglamentos, **los procedimientos adjudicativos, la revisión judicial**, el procedimiento para la concesión de certificaciones, franquicias, querellas de usuarios y entre compañías de energía y los procedimientos para inspecciones. Disponiéndose que, debido a la necesidad de comenzar prontamente las operaciones del NEPR, se podrá utilizar el mecanismo establecido en la Sección 2.13 de la Ley 38-2017 para la adopción de los*

*primeros reglamentos del NEPR, sin necesidad de que el Gobernador emita certificación alguna. **Según lo dispuesto en dicha Ley, las decisiones y órdenes del NEPR estarán sujetas a la revisión del Tribunal de Apelaciones de Puerto Rico**.*

(Énfasis Suplido).

## III.

Como es sabido, las cuestiones relativas a la jurisdicción del tribunal deben resolverse con preferencia a cualesquiera otras. *Báez Figueroa v. Adm. Corrección*, 209 DPR 288, 298 (2022). De este modo, nos corresponde determinar, en primera instancia, si la notificación de la Resolución recurrida cumple con las garantías del debido proceso de ley o si, por el contrario, procede la desestimación del recurso por falta de jurisdicción.

Según revela el tracto procesal discutido, el NEPR emitió una "Resolution and Order" determinando que Genera realizó falsas representaciones en el proceso de RFP ya que: (1) indicó que su propuesta era más económica en comparación con el estimado que había hecho la AEE, y (2) la fecha de COD propuesta por la AEE (primavera del año 2026) se reduciría entre 9 a 12 meses. Empero, luego resultó que el estimado preliminar era significativamente mayor al propuesto por la AEE,[3] y que el COD se proyectaba para el primer y cuarto trimestre del 2027. Debido a esto, ordenó a Genera a completar el proyecto para finales del segundo trimestre del 2026 y le advirtió que, de no culminarlo dentro de esta fecha, se le impondría una multa diaria de $25,000.00 por cada día que el proyecto permanezca incompleto.

En su escrito, el recurrente argumenta que se le violentó su debido proceso de ley, ya que la aludida "Resolution and Order" no le advirtió sobre su derecho a solicitar reconsideración y/o revisión judicial. Tiene razón.

---

[3] El estimado de la AEE era de $613,541,936.38, mientras que el estimado preliminar de Genera resultó ser de $911,340,000.00.

Cónsono con el derecho discutido en el acápite anterior, el Art. 6.20 de la Ley Núm. 57-2014, *supra*, claramente dispone que las decisiones y órdenes del NEPR estarán sujetas a la revisión del Tribunal de Apelaciones de Puerto Rico, y que los procedimientos adjudicativos y de revisión judicial se regirán por las disposiciones de la LPAU. Según señalamos, la Sección 3.14 de la Ley 38-2017, *supra*, exige que toda Orden o Resolución final emitida por una agencia incluya la siguiente información: (1) determinaciones de hechos, (2) conclusiones de derecho, (3) advertencia del derecho de solicitar reconsideración ante la agencia o de instar un recurso de revisión ante el Tribunal de Apelaciones, y (4) la firma del jefe de la agencia o cualquier otro funcionario autorizado por ley.

Tras un examen de la notificación del dictamen recurrido, concluimos que esta es evidentemente insuficiente, inadecuada y defectuosa por incumplir con los requisitos recabados en la Sección 3.14 de la LPAU, *supra*. En su "Resolution and Order" el NEPR incluyó: (1) determinaciones de hechos, (2) conclusiones de derecho y (3) la firma del jefe de la agencia o cualquier otro funcionario autorizado por ley. **No obstante**, **no se le advirtió a Genera sobre su derecho de solicitar reconsideración ante la agencia o de instar un recurso de revisión ante este Tribunal de Apelaciones**. **Tampoco se incluyó expresión alguna de los términos dispuestos en ley para ello**.

En fin, el tracto procesal del caso demuestra que estamos ante una notificación defectuosa, por lo que carecemos de jurisdicción para atender el presente recurso. Siendo ello así, nos corresponde desestimar el caso por falta de jurisdicción, puesto que, ante el hecho de que la decisión cuya revisión se nos solicita no advierte sobre el derecho a solicitar reconsideración y/o revisión judicial, según lo exige nuestro ordenamiento legal, estamos ante la consideración un recurso prematuro.

Recordemos que, una notificación defectuosa tiene el efecto de que no comiencen a transcurrir los términos para solicitar reconsideración y/o revisión judicial. Por ende, le corresponde al NEPR notificar nuevamente su "Resolution and Order" e incluir las debidas advertencias. Hasta tanto, la Resolución recurrida no tendrá efecto legal alguno.

Aclaramos que lo aquí resuelto no impide que el recurrente comparezca nuevamente ante este Foro una vez el NEPR notifique correctamente su dictamen final, siempre y cuando lo haga dentro del término jurisdiccional dispuesto para ello.

**IV.**

Por los fundamentos expuestos, los que hacemos formar parte de este dictamen, desestimamos el recurso presentado por Genera PR, LLC, por prematuro.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones